# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**EMMIT D. CRUM,**

       **Petitioner,**

**v.**                                                                      **Case No. 3:11cv480/RV/CJK**

**MICHAEL D. CREWS,[1]**

       **Respondent.**

_____/

# ORDER and
# REPORT AND RECOMMENDATION

Before the Court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 16).  Respondent filed an answer (doc. 20), submitting relevant portions of the state court record (docs. 21, 22).  Petitioner replied.  (Doc. 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The

---

[1]Michael D. Crews succeeded Edwin G. Buss and Kenneth S. Tucker as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief and that the amended petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

In October of 2006, petitioner was charged by second amended information filed in the Circuit Court for Escambia County, Florida, Case Number 06-CF-4535, with three drug-related offenses: Conspiracy to Traffic in Cannabis - over 25 pounds, but less than 2,000 pounds (Count 1); Conspiracy to Traffic in Cocaine - 400 grams or more, but less than 150 kilograms (Count 2); and Conspiracy to Traffic in Illegal Drugs - Heroin, Morphine, Opium - 4 grams or more, but less than 14 grams (Count 3). (Doc. 21, Ex. A, pp. 4-5).[2] The State nolle prossed Count 3 on October 1, 2007. (Doc. 21, Ex. B, p. 311). After a jury trial on the remaining two counts, (exs. C-F), petitioner was found not guilty of Count 1 and guilty as charged of Count 2. (Doc. 21, Ex. B, pp. 254-55). Judgment of Not Guilty on Count 1 was entered October 5, 2007. (*Id*., p. 256). On October 26, 2007, petitioner was adjudicated guilty of Conspiracy to Traffic in Cocaine, was determined to be a Habitual Felony Offender, and was sentenced to twenty-two years incarceration with a fifteen-year minimum mandatory. (*Id*., pp. 262-91). Judgment was entered that date. (*Id.*, pp. 305-11). Petitioner's judgment of conviction was affirmed, per curiam and without a written opinion, on May 4, 2009. *Crum v. State*, 7 So. 3d 537 (Fla. 1st DCA 2009) (Table) (copy at Doc. 22, Ex. I). Petitioner sought certiorari in the United States Supreme Court, but was denied on October 5, 2009. (Doc. 22, Ex. L).

---

[2]All references to exhibits are to those provided at Docs. 21 and 22, unless otherwise noted.

On March 30, 2010, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 22, Ex. M, pp. 1-59). The motion was stricken as facially insufficient, with leave given to file an amended motion. (*Id.*, pp. 60-62). Petitioner filed an amended Rule 3.850 motion on August 3, 2010, raising twelve grounds. (*Id.*, pp. 65-125). The postconviction court denied relief without an evidentiary hearing. (Doc. 22, Ex. N, pp. 203-288). The Florida First District Court of Appeal ("First DCA") summarily affirmed, *Crum v. State*, 68 So. 3d 236 (Fla. 1st DCA 2011) (Table), with the mandate issuing September 13, 2011. (Doc. 22, Exs. P, Q).

Petitioner filed his original federal habeas petition in this Court on September 26, 2011. (Doc. 1, p. 1). Petitioner's amended petition, filed on April 11, 2012, raises ten grounds for relief. (Doc. 16). Respondent asserts petitioner is not entitled to relief on any of his claims, because some of them are procedurally defaulted and all of them are without merit. (Doc. 20).

APPLICABLE LEGAL STANDARDS

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct'

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct.

---

      (B) (i)  there is an absence of available State corrective process; or

        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue. *Thaler v. Haynes*, 559U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary

to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently

declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One      <u>"The State Court Erred In Denying Petitioner's Requested Theory Of Defense Jury Instruction That Mere Presence And Aiding And Abetting An Offense Did Not Constitute Conspiracy."</u> (Doc. 16, p. 4).

Petitioner claims the trial court erred when it denied his request that the jury be instructed that neither the mere presence at the scene of an offense, nor the aiding and abetting of an offense, constitutes conspiracy. Petitioner proposed the following five instructions:

1. Mere presence at scene of offense is insufficient to establish conspiracy.

2. Conspiracy may not be inferred from aiding and abetting alone.

3. Evidence that a person aided and abetted another in commission of an offense, though sufficient to convict a person as a principal in such offense, is insufficient to convict either person of a conspiracy to commit subject offense.

4. Act of defendants in aiding and abetting one another in committing substantive offense, to wit, unlawful possession of over 100 pounds of marijuana, was insufficient in itself to establish that defendants committed crime of conspiracy by expressly or impliedly agreeing with one another to commit a criminal offense.

5. Acts which amount to aiding and abetting other defendants to effect crime of drug trafficking cannot constitute acts of conspiracy to sell or purchase drugs.

(Doc. 21, Ex. B, pp. 239-40). Petitioner argues that it was error for the court to reject the instructions, because his defense was that although he was present when the underlying drug crimes were committed, the prosecution witnesses' testimony supported, at most, a finding that he aided and abetted the commission of the offenses but not that he conspired to commit them; therefore, the jury should have been instructed that his mere presence or aiding and abetting did not constitute conspiracy. (Doc. 16, p. 4). Petitioner states he exhausted this claim by raising it on direct appeal. (*Id*.).

Respondent argues that petitioner's claim, on its face, presently a purely state law issue and does not advance a federal constitutional claim cognizable on habeas review. (Doc. 20, pp. 3-4). Respondent explains that although petitioner claimed on direct appeal that he had a federal constitutional right to the instruction because it involved his "theory of defense, separate and apart from instructions given on the elements of the charged offense" (doc. 20, p. 3 (*citing* doc. 22, Ex. G, p. 16)), petitioner does not advance a federal claim here, or even mention federal law or the

United States Constitution. Respondent alternatively argues that even if the Court liberally construes petitioner's claim as asserting a federal due process challenge to the trial court's rejection of the proposed jury instruction, petitioner is not entitled to federal habeas relief because he has not shown that the rejection of the instruction infected the entire trial with unfairness to the point of violating due process. (*Id.*, pp. 4-5).

Petitioner replies that his entitlement to the instruction was clearly established by the Supreme Court in *Mathews v. United States*, 485 U.S. 58, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988), which held that "[a] criminal defendant has the right to a jury instruction on his theory of defense, separate and apart from instructions given on the element of the charged offense." (Doc. 25, p. 6). The *Mathews* case was not decided on constitutional grounds. But even liberally construing petitioner's amended petition and reply to plead a federal due process claim, petitioner is not entitled to federal habeas relief.

A.      Clearly Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970). When a federal habeas petitioner challenges an allegedly improper jury instruction in a collateral proceeding, he bears the burden of demonstrating that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736-37, 52 L. Ed. 2d 203 (1977) (quotation omitted). Where the petitioner does not claim that an erroneous instruction was given, but instead

challenges the failure to give an instruction further explaining an element of the offense (which is the case here), his burden is "especially heavy", because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.*, 431 U.S. at 155, 97 S. Ct. at 1737. A federal habeas court reviewing a challenged instruction must consider the instruction in the context of the instructions as a whole as well as the entire trial record. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991).

B.      Federal Review of State Court Decision

Count 2 of the amended information alleged that petitioner conspired to traffic in cocaine (400 grams or more, but less than 150 kilograms) with Kenneth Damon Savage and/or Douglas Lewis between January 20, 2004, and September 8, 2006. One of the facts the prosecution was required to prove is that petitioner "agree[d], conspire[d], combine[]d, or confederate[d] with another person or persons" to commit the offense of trafficking in cocaine. Fla. Stat. § 777.04(3); *see also* Fla. Stat. § 893.135(1)(b)1. "[T]he crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Both an agreement and an intention to commit an offense are necessary elements of this crime." *Ramirez v. State*, 371 So.2d 1063, 1065 (Fla. 3d DCA 1979).

The trial court gave the standard jury instruction then in effect on the law of conspiracy:

> To prove the crime of criminal conspiracy to trafficking in cocaine, 400 grams or more but less than 150 kilograms, the State must prove the following two elements beyond a reasonable doubt: One, the intent of Emmitt Dewayne Crum – excuse me, Emmitt Dewayne Crum, Jr. was that the offense of trafficking in cocaine, 400 grams or more but less than 150 kilograms, would be committed; two, in order to carry out the

intent, Emmitt Dewayne Crum, Jr., agreed, conspired, combined, or confederated with Kenneth Damon Savage and/or Douglas Lewis to cause trafficking in cocaine, 400 grams or more but less than 150 kilograms, to be committed either by them or one of them or by some other person

It is not necessary that the agreement, conspiracy, combination, confederation to commit trafficking in cocaine, 400 grams or more but less than 150 kilograms, be expressed in any particular words or that words pass between the conspirators. It is not necessary that the defendant do any act in furtherance of the offense conspired.

(Doc. 21, Ex. B, pp. 244-45; Doc. 22, Ex. F, pp. 680-81; *see also* Fla. Std. Jury Instr. (Crim.) 5.3). The trial court also gave the standard jury instruction on the defendant's presumption of innocence, reasonable doubt and weighing the evidence. (*Id*., pp. 684-87; *see also* Fla. Std. Jury Instr. (Crim.) 3.7 and 3.9).

In Florida, trial courts are generally required to adhere to the standard jury instructions after determining whether the standard jury instructions accurately and adequately state the relevant law. *See Moody v. State*, 359 So.2d 557 (Fla. 4 DCA 1978). When the standard instructions accurately and adequately state the relevant law, trial courts in Florida are required to give the standard instructions in the absence of extraordinary circumstances. *Id*. The trial court in petitioner's case denied the defense's requested instructions because the instructions could confuse the jury and because they did not present a valid defense or instruct the jury on the "positive" elements of the crime charged (the elements the State must prove), but instead sought to instruct "the negatives of it" (what is "not" a conspiracy). The trial court explained:

[T]here are two concerns the Court has. Concern No. 1 is the concern of the potential for confusion and the potential – and that is most

especially associated with the instruction that would use the discussion of aiding and abetting and say conspiracy is not this thing, without defining this thing, without giving the jury clarity on what this thing is. The other is the avoidance of saying in this case, in which you must find the defendant not guilty unless the State convinces you positively of each of these elements, then categorizing the argument as what the positives are not, if that makes sense.

The State has this burden of proving that there was this agreement, there was this intent, and there could be a list of a thousand things of which the agreement and the intent are not, but we've never been asked to list those things, all of which it's not. It's the State's job to prove the positive things that it is, before a jury could return a verdict of guilty.

And it really is like almost any case in which the State has the burden of proving a specific element, a positive element of action or intent or knowledge, and then coming in and saying, well, Judge, you should instruct the jury on what this is not. It's not this. It's not that. No, I think that's an appropriate matter for argument but not an appropriate matter for jury instruction because the State's the one that's got to prove the positive, and to the extent that the positive is not proved, then there is only one option for the jury, and that's to return a verdict of not guilty.

I understand, as a matter of law, when they're discussing these things in the appellate opinion and how they're saying this evidence is insufficient to prove this, as a matter of law. Well, in this case, you know, I have to address that issue: Is the evidence sufficient, as a matter of law, to establish this, considering the evidence in the light most favorable to the State? And it is sufficient, and, therefore, since that's a law judgment that that evidence is sufficient, and since the jury has then got to be convinced of the positive proof of each element beyond a reasonable doubt, I think it would be confusing, and I would decline the request for the special jury instruction.

. . . .

. . . I don't set out the negatives of it, of any possible defense that might be asserted. If the defense is such that it's – if the State doesn't prove its case, then you've got to return a verdict of not guilty, that kind of thing. I mean, that's the whole – that's the whole gravamen of the jury instructions anyway.

(Doc. 22, Ex. E, pp. 575-78).

Petitioner raised the issue on direct appeal. The First DCA summarily rejected the claim without explanation. The First DCA's summary rejection is due deference under 28 U.S.C. § 2254(d). *See Richter*, 131 S. Ct. at 784-85; *Pinholster*, 131 S. Ct. at 1402. Because the First DCA's decision was summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision." *Pinholster*, 131 S.Ct. at 1402 (*quoting Richter*, 131 S.Ct. at 786).

The Court has reviewed the entire trial record, including petitioner's proposed instructions and the jury instructions that were given. The instructions given were substantively correct and adequately addressed the applicable legal standards. The jury was instructed that it must find beyond a reasonable doubt that petitioner intended that the offense of trafficking in cocaine be committed, that petitioner agreed or confederated with Savage and/or Lewis to cause the offense of trafficking in cocaine to be committed, and the existence of the agreement. If the jury determined that the evidence showed petitioner was merely present at the scene of the drug transaction(s) or simply aided Savage and/or Lewis in trafficking in cocaine, the jury would, under the instructions, find petitioner was not guilty of Conspiracy to Traffic in Cocaine because he did not enter into an agreement with Savage and/or Lewis to traffic in cocaine. As the trial court recognized, petitioner's requested instructions

did not describe a defense – they were more of a jury argument on the adequacy of proof than a proper request for instruction. (Doc. 22, Ex. E, p. 576). The holding in *Mathews v. United States*, 485 U.S. 58, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988), does not clearly establish petitioner's entitlement to the special instructions he requested. *Mathews* relates to a district court's failure to offer an instruction with respect to the affirmative defense of entrapment, a defense that has independent elements and presupposes commission of a crime. Here, petitioner did not rely on an affirmative defense. The defense theory was that the State failed to prove the existence of an agreement and the intent necessary to establish a conspiracy to traffic in cocaine. Petitioner sought instructions that would highlight the facts from his perspective and was otherwise covered by other instructions. The instructions to the jury clearly indicated the elements of conspiracy and that the State had to prove petitioner committed the offense beyond a reasonable doubt. The state courts' rejection of petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. *See, e.g., Rodriguez v. Wainwright*, 740 F.2d 884, 885 (11th Cir. 1984) ("Where a requested jury instruction is already covered by the charges given, failure to give the requested charge is not error at all, much less constitutional error."); *see also, e.g., Taylor v. Sec'y, Dep't of* Corr., 507 F. App'x 887, 890 (11th Cir. 2013) (rejecting habeas petitioner's due process challenge to trial court's failure to permit defense's proposed jury instruction on lost or stolen property; jury was properly instructed on elements of theft, including that petitioner "knowingly, unlawfully" obtained the property and did so with the "intent to either temporarily or permanently deprive" the owner of her right to the property or to appropriate it for his or another's use; if jury believed that petitioner found the

property on the ground after it had been stolen and believed he was able to keep it for himself, the jury was able to find petitioner was not guilty of theft because he did not "knowingly, unlawfully" obtain the property with the intent to deprive).

Petitioner is not entitled to federal habeas relief on Ground One.

| | |
|---|---|
| Ground Two | "The State Court Erred In Denying Petitioner's Claim Asserting Fundamental Error In Allowing Special Agent Rigoni To Interpret The Wiretapped Conversations When He Had Not Been Qualified As An Expert And Even Had He Been Qualified As Experts [sic], The Interpretations He Offered Exceeded That Permitted By An Expert In Drug Code And Instead Intruded On The Province Of The Jury As A Fact Finder." (Doc. 16, p. 9). |

Petitioner claims the First DCA erred when it denied his direct appeal claim that the trial court should have *sua sponte* excluded Special Agent Rigoni's testimony where he interpreted language used in wiretapped conversations admitted into evidence. Petitioner argues that Rigoni's testimony was improper, because it "amounted to interpreting ambiguous words to mean what he needed them to mean for the petitioner to be guilty of conspiracy to traffic in cocaine." (Doc. 16, p. 11). Petitioner conceded on direct appeal that the issue was not preserved by an objection at trial and therefore could only be reviewed for fundamental error. (Doc. 22, Ex. G, p. 18).

Respondent asserts that petitioner's claim is procedurally defaulted because petitioner did not present a federal constitutional claim to the state court on direct appeal. (Doc. 20, pp. 6-7). Respondent alternatively argues that petitioner's claim fails on the merits. (*Id.*, pp. 7-8).

Reading petitioner's amended habeas corpus petition in isolation, petitioner's Ground Two fails to plead a federal constitutional violation. Petitioner seeks habeas

relief premised upon a state evidentiary error, arguing that the failure to exclude Rigoni's interpretative testimony was "improper" and constituted fundamental error under state law. Petitioner does not assert that the error "'so infused the trial with unfairness as to deny due process of law.'" *Felker v. Turpin*, 83 F.3d 1303, 1311 (11th Cir. 1996) (*quoting Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941)) (citations omitted). "It is not the province of a federal habeas Court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68, 112 S. Ct. at 480. Petitioner's reply is a bit more expansive, arguing that the evidentiary error "actually and substantially disadvantaged the petitioner at trial as he was denied fundamental fairness." (Doc. 25, p. 15). Even reading petitioner's filings together and liberally construing them as raising a federal constitutional claim, petitioner is not entitled to federal habeas relief because he did not present a federal due process claim to the state court in his direct appeal – a proceeding in which he was represented by counsel.

    A.    Exhaustion and Procedural Default

To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66 (explaining that,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."); *O'Sullivan*, 526 U.S. at 845; *Picard*, 404 U.S. at 277-78 (rejecting the contention that the exhaustion requirement is satisfied when a petitioner presents the state courts only with the facts necessary to state a claim for relief).

Petitioner's summary of the argument on direct appeal explained that Rigoni's

testimony was improper because he was not qualified as an expert witness and, even if so qualified, his testimony exceeded the bounds permitted an expert. (Doc. 22, Ex. G, p. 11). Appellate counsel argued that although no objection was made below, "it constituted fundamental error on the facts of this case, that is it affected 'the validity of the trial itself to the extent that a verdict of guilty could not have obtained without the assistance of the alleged error.'" (Doc. 22, Ex. G, p. 11 (*quoting State v. Delva*, 575 So.2d 643, 644 (Fla. 1991))). In the body of petitioner's appellate brief, petitioner alleged that Rigoni was allowed, without objection, to "repeatedly offer his own interpretation or explanation of key elements of most of the recorded phone calls admitted into evidence in this case. Without his gloss the wire tap conversations standing alone would not have supported the verdict." (Doc. 22, Ex. G, p. 18). Petitioner argued that Rigoni's testimony was not admissible under Fla. Stat. § 90.702 as expert opinion, and even if admissible, failed to "pass muster under Florida Statutes, § 90.403; its probative value must not be substantially outweighed by unfair prejudice." (Doc. 22, Ex. G, p. 20). Petitioner's brief cited primarily to state cases. A handful of cases was cited from the United States Court of Appeals for the Second Circuit, but only for factual similarity and for the proposition that there is a distinction between an expert witness who engages in a true interpretation of known drug argot, and an expert purporting to interpret what are simply veiled conversations not based on established street language. (Doc. 22, Ex. G, pp. 21-25). The Second Circuit applied the federal rules of evidence to resolve the admissibility issue. None of the cases cited by petitioner were decided on federal constitutional grounds, and petitioner did not otherwise indicate that he intended to raise a federal constitutional claim. Petitioner's appellate argument concluded that admitting Rigoni's testimony "was fundamental error if not alone, then in combination with the prejudice from the

errors complained of in [the two other issues raised in petitioner's direct appeal]." (Doc. 22, Ex. G, p. 32).

Petitioner's direct appeal brief did not say, or even suggest, that his claim was a federal claim about due process. (Doc. 22, Ex. G, pp. 18-32). Accordingly, the state court was not on notice of a Fourteenth Amendment due process claim. *See, e.g., Duncan v. Henry*, 513 U.S. at 365-66 (holding that federal habeas petitioner failed to exhaust claim that state trial court's evidentiary ruling violated the Due Process Clause of the Fourteenth Amendment; petitioner's state law claim that the prejudicial effect of the evidence outweighed its probative value was only somewhat similar to, not the same as, petitioner's federal habeas claim that the evidence was so inflammatory as to prevent a fair trial); *Zeigler v. Crosby*, 345 F. 3d 1300, 1307 (11th Cir. 2003) (holding that federal habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the federal Constitution).

Because any further attempt by petitioner to return to state court to exhaust a federal constitutional claim concerning the admission of Rigoni's testimony would be futile, petitioner's unexhausted federal claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S. Ct. 2546, 2557 n. 1, 115 L. Ed. 2d 640 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas . . . ." (citations omitted)); *O'Sullivan*, 526 U.S. at 848, 119 S.Ct. at 1734 (stating that where a petitioner has not "properly presented his claims to the state courts," he will have "procedurally defaulted his claims" in

federal court); *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."); *see also* Fla. R. Crim P. 3.850(c) (barring collateral review for claims that could have or should have been raised on direct appeal; Fla. R. Crim. P. 3.850 (f) (barring the filing of a second or successive postconviction motion). Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Two.

Ground Three      <u>"The State Court Erred In Denying Petitioners [sic] Claim Of Fundamental Error For Trial Court's Failure To Give Any Cautionary Instruction Following The Admission On Direct Examination Of Four State Witnesses That They Each Had Pled Guilty In Connection With The Same Or A Clearly Related Investigation To That For Which Petitioner Was On Trial</u>." (Doc. 16, p. 12).

Petitioner claims the First DCA erred when it denied his direct appeal claim that the trial court erred in failing to give a cautionary instruction concerning the care with which testimony of an accomplice or co-conspirator must be received, and a cautionary instruction that the fact that the four State's witnesses pled guilty could not be considered as evidence of petitioner's guilt. Petitioner conceded on direct appeal that he failed to request the cautionary instructions at trial. (Doc. 22, Ex. G, p. 32).

Respondent, apparently assuming to petitioner's benefit that this claim raises a federal constitutional issue cognizable on habeas review, asserts that petitioner's claim is procedurally defaulted because petitioner did not present a federal claim to the state court on direct appeal. (Doc. 20, pp. 8-9). Respondent alternatively argues petitioner's claim fails on the merits. (*Id*., pp. 9-10).

A.      Failure to Plead Federal Constitutional Violation

Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, because no federal constitutional question is presented.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Even liberally construing petitioner's amended petition and reply, petitioner's claim of trial court error presents an issue of pure state law and does not plead a federal constitutional violation.  Federal habeas relief may be denied on this basis.

B.      Exhaustion and Procedural Default

Even if petitioner's Ground Three were liberally construed as raising a <u>federal constitutional</u> challenge to the trial court's failure to give a cautionary instruction, the federal claim is unexhausted and procedurally defaulted, because petitioner did not present the federal constitutional nature of his claim to the state appellate court on direct appeal.

When petitioner challenged the lack of a cautionary instruction on direct appeal, he did not say, or even suggest, that his claim was a federal claim about due process.  (Doc. 22, Ex. G, pp. 32-24).  Petitioner cited exclusively to state law cases and all of his substantive arguments addressed Florida law, namely, Florida's rule on the admissibility of a co-defendant's or an accomplice's testimony and the  propriety of corresponding cautionary instructions.  None of the cases petitioner cited were decided on federal grounds, and petitioner did not otherwise indicate he intended to

raise a federal claim. Petitioner merely contended that the trial court's failure to *sua sponte* give the cautionary instruction "was fundamental error if not alone, then in combination with the errors complained of in [the other two issues raised in the direct appeal]". (*Id.*, p. 34). Nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal constitutional claim about due process or the Fourteenth Amendment. Petitioner failed to exhaust a federal claim in state court. *See Baldwin v. Reese, supra*; *Duncan v. Henry, supra*.

Because any further attempt by petitioner to return to state court to exhaust a federal constitutional claim concerning the instruction would be futile, petitioner's unexhausted federal claim is procedurally defaulted. *Coleman v. Thompson*, *supra*; *O'Sullivan*, *supra*; *see also* Fla. R. Crim P. 3.850(c) (barring collateral review for claims that could have or should have been raised on direct appeal; Fla. R. Crim. P. 3.850 (f) (barring the filing of a second or successive postconviction motion). Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Three.

Ground Four      <u>"The State Court Erred In Denying Ground One Of Petitioner's Postconviction Rule 3.850 Motion Alleging Defense Counsel's Failure To Argue Fundamental Error Where Trial Court Instructed Jury On Trafficking In Cocaine, A Crime Not Charged To Petitioner."</u> (Doc. 16, pp. 13-14).

Although petitioner labels his claim as one involving trial counsel's failure to object to a jury instruction on a crime not charged, petitioner's claim actually involves trial counsel's failure to object to the trial court's answer to a jury question. After the jury had been properly charged and was deliberating, the jury posed a three-part question to the trial court: "What does conspire and trafficking mean? And at what point can you join a conspiracy." (Doc. 21, Ex. B, p. 208; Doc. 22, Ex. F, p.

703). After hearing from the prosecutor and defense counsel outside the presence of the jury, the trial court ruled that it would answer the second part of the question – what does trafficking mean –  by giving the jury the standard jury instructions on trafficking in cannabis and trafficking in cocaine. (Doc. 22, Ex. F, pp. 716-25). The trial court instructed the jury accordingly. (*Id*.).

Respondent responds that petitioner's claim is without merit, because the state court's order denying postconviction relief on this claim was consistent with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and because even reviewed *de novo*, petitioner's claim is completely devoid of merit. (Doc. 20, pp. 12-14).

A.     Clearly Established Federal Law

In *Strickland v. Washington*, the Supreme Court set out a two-part inquiry for ineffective assistance claims.   A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an

easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.     Federal Review of State Court Decision

Petitioner raised, as Ground One of his amended Rule 3.850 motion, the claim that counsel:

> failed to argue issue of fundamental error concerning instruction given to jury, where trial court answered jury question regarding what the definition of trafficking in cocaine. Defendant was charged and on trial for conspiracy to traffic in cocaine, not trafficking in cocaine. Failure by counsel to argue that giving instruction on trafficking in cocaine would result in fundamental error, resulted in fundamental error occurring, as instruction both misled and confused the jury in its determination of charged crime.

(Doc. 22, Ex. M, pp. 131-35). The state postconviction court denied relief without an evidentiary hearing. (Doc. 22, Ex. N, pp. 205-06). The state court's written order discussed the two-pronged test for ineffective assistance of counsel claims, citing *Torres-Arboleda v. Dugger*, 636 So.2d 1321 (Fla. 1994), *receded from on other grounds by Coleman v. State*, 64 So.3d 1210 (Fla. 2011). (Doc. 22, Ex. N, p. 204).

The test articulated in *Torres-Arboleda* is the deficient performance and prejudice standard established by the Supreme Court in *Strickland v. Washington, supra*. *See Torres-Arboleda*, 636 So.2d at 1324 ("To the extent that these issues raise claims of ineffective assistance of counsel, we find no merit as Torres-Arboleda has failed to demonstrate deficient performance or prejudice as required by Strickland [ ]."). The state postconviction court denied relief as follows:

> In Defendant's first allegation, he notes that the Court received questions from the jury during their deliberations. The jury wished to know 1) the meaning of *conspire*; 2) the meaning of *trafficking*; and 3) at what point a person can join a conspiracy. The Court discussed with counsel the appropriate answers to those questions. Defendant argues that counsel should have objected to the Court's giving the jury a definition of trafficking.
>
> The record indicates that counsel did indeed object to the Court's reading the jury the standard jury instruction regarding trafficking. Counsel argued that defining trafficking could shift the jury's attention away from determining whether Defendant had been involved in a conspiracy. Defendant alleges, however, that counsel should have further argued that the giving of the trafficking instruction would "mislead and confuse" the jury.
>
> The Court finds that the argument made by counsel regarding the trafficking instruction is of little substantive difference from the argument Defendant now advances. Further, Defendant cannot show that the Court would have changed its decision regarding reading the trafficking instruction had counsel used the words "mislead and confuse" rather then the words that counsel chose. This allegation cannot entitle Defendant to relief.

(Doc. 22, Ex. N, pp. 205-06) (footnote citing to attached portion of trial transcript omitted). The First DCA summarily affirmed.

The state court's rejection of petitioner's claim was not "contrary to" clearly

established federal law, because the state court applied the two-pronged standard identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984). There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

The state court's rejection of petitioner's claim was not based on an unreasonable application of *Strickland*, or on an unreasonable determination of the facts. When the trial court asked defense counsel for his position on whether the court should answer the second part of the jury's question by giving the standard jury instructions on trafficking in cannabis and trafficking in cocaine, defense counsel objected on the grounds that reading the instruction on the substantive offense of trafficking outside the context of conspiracy to traffic, shifted the jury's focus from the charged offense of conspiracy to the different offense of trafficking, only to be shifted back to conspiracy. (Doc. 22, Ex. F, pp. 705-08, 712). The trial court ruled, over defense counsel's objection, that it would answer the jury's question on trafficking by reading the standard instructions on trafficking in cannabis and trafficking in cocaine and then telling the jury that those are the definitions of trafficking in those controlled substances. (*Id.*, pp. 716-17). When the jury returned to the courtroom, the trial court answered the three-part question as it said it would. (*Id.*, pp. 718-25). The court first defined trafficking in cannabis and trafficking in cocaine and then reiterated the definition of conspiracy by re-reading the standard instruction on the elements of criminal conspiracy. (*Id.*). Within its answer, the court reminded the jurors that petitioner was charged with conspiracy to traffic in cannabis, not actual trafficking, and that the definition of trafficking in cannabis was given only "to elucidate for your information the response to your question of what does trafficking mean." (*Id.*, p. 722). As the defense later objected, the court inadvertently

did not so instruct as to the trafficking in cocaine. (*Id.*, pp. 723, 728). To remedy this, the trial court provided the jurors with written copies of its answer. Without waiving the larger objection, defense counsel agreed. (*Id.*, pp. 729-30). When providing the jury with the written version of its answer, the trial court reminded the jury that petitioner was charged only with conspiracy to traffic in respective drugs:

> Finally, I just remind you that both as to trafficking in cannabis and as to trafficking in cocaine, these are the substantive offense instructions that we've given you. The reason they weren't given to you at the beginning was because, of course, what Mr. Crum is charged with is the crime of conspiracy to commit one of these offenses, conspiracy to commit trafficking in cannabis of a certain amount in Count 1 and conspiracy to commit trafficking in cocaine in Count 2. So I don't – I want you to keep in focus that the State's obligation, the State's burden, if you will, in this case is to prove guilt beyond a reasonable doubt as to the commission of conspiracy to commit this particular offense here.

(*Id.*, pp. 758-59).

The state postconviction court's determination that defense counsel made essentially the same objection petitioner faults him for failing to make, is reasonable. To say that counsel should have argued that giving the definition of trafficking would mislead and confuse the jury, instead of arguing that giving the definition of trafficking would give the jury the wrong impression about what they were to decide by diverting their attention away from the crime charged to a different crime, is a distinction without a difference. Further, contrary to petitioner's assertion that counsel should have objected on the grounds that the jury was being instructed on an uncharged crime, the trial transcript establishes that at no time were the jurors instructed on the substantive crime of trafficking as part of the final instructions. The trafficking instruction was given in response to the jury's question on the legal definition of trafficking, and was accompanied, verbally and through the written

answer, with a reminder that the actual charges were conspiracy to traffic. Counsel's objection was a reasonable one, and the state court's conclusion that petitioner failed to establish constitutionally deficient performance was a reasonable application of the *Strickland* standard. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (instructing that in evaluating the deficient performance prong, courts must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."); *see also Hubbard v. Haley*, 317, F.3d 1245, 1259 (11th Cir. 2003) ("The Supreme Court has recognized that defense counsel in defending their client's interests, need not urge every conceivable objection the law would provide." (*citing Engle v. Isaac*, 456 U.S. 107, 133-34, 102 S. Ct. 1558, 1575, 71 L. Ed. 2d 783 (1982))); *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (explaining that the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").

The state court also concluded, reasonably, that petitioner failed to establish prejudice because he failed to establish a reasonable probability that the trial court would have sustained counsel's objection had he used the words "mislead" and "confuse" instead of, or in addition to, the words counsel chose. Petitioner's inability to establish prejudice is highlighted by the fact that petitioner was acquitted for the cannabis-conspiracy count, showing that the court's response to their question about the definition of trafficking did not confuse the jurors or give them the wrong impression about what they were to decide.

The state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five       "The State Court Erred In Denying Ground Two Of Petitioner's Postconviction Rule 3.850 Motion Alleging Defense Counsel's Failure To Exclude Testimony Regarding Collateral Crimes Evidence As Such Evidence Was Irrelevant And Taken By Jury As Evidence Of Charged Crimes." (Doc. 16, p. 14).

Petitioner faults defense counsel for failing to seek the exclusion of collateral crime testimony by State's witnesses Wigley, Butler, Rome and Williams. (Doc. 16, pp. 14-16). Petitioner argues that the evidence was inadmissible because it was irrelevant to show that he conspired to traffic in 400 grams or more of cocaine, and because it was offered solely to show his propensity to commit the charged crime.

Respondent adopts the State's response to petitioner's Rule 3.850 motion and the postconviction court's order denying relief, and argues that the state court's rejection of this claim was consistent with *Strickland*. (Doc. 20, p. 15 (*citing* Ex. N, pp. 195-97 and 206-10)).

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of his amended Rule 3.850 motion. (Doc. 22, Ex. M, pp. 136-45). The state court denied relief as follows:

> Defendant next argues that several of the State's witnesses – Wigley, Butler, Rome, and Williams – gave testimony regarding Defendant's past drug dealing. Defendant argues that this testimony was "offered solely to show the Defendant's propensity to commit the charged crime: nothing more." As such, Defendant argues that the testimony was improper and should not have been admitted without objection.
>
> "To be legally relevant, evidence must pass the tests of materiality

(bearing on a fact to be proved), competency (being testified to by one in a position to know), and legal relevancy (having a tendency to make the fact more or less probable) and must not be excluded to other countervailing reasons." Sims v. Brown, 574 So. 2d 131, 134 (Fla. 1991). "Under traditional concepts of relevance, for evidence to be relevant, it must have a logical tendency to render a proposition more or less probable. . . . [E]ven if evidence is relevant, it may be inadmissible if the 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.'" Johnson v. State, 40 So. 3d 883, 886 (Fla. 4th DCA 2010), quoting Fla. Stat. § 90.403.

### Wigley

As to Witness Wigley, Defendant argues that her testimony that she had often purchased five grams of crack cocaine from defendant was not relevant to determine whether Defendant was guilty of conspiracy to traffic in 400 grams or more of cocaine.

While she did not testify to the large amounts of cocaine needed to establish the trafficking part of the charge, Wigley did testify to Defendant's associations with another of the conspirators. Wigley testified that when she bought crack cocaine from Defendant, Savage would often accompany him and that once Savage had delivered the drugs for Defendant. Therefore, Wigley's testimony regarding buying crack cocaine from Defendant helped to establish Defendant's connection with one of the co-conspirators. Evidence of defendant's dealings and connections with other co-conspirators cannot be said to be irrelevant to the charges brought against Defendant at trial.

### Butler

Defendant alleges that Butler's testimony that he had observed Defendant conducting drug transactions with Douglas Lewis and had observed Defendant and Lewis pooling their resources to buy cocaine was not relevant in a trial regarding Defendant's conspiring to traffic in 400 or more grams of cocaine.

Butler's testimony regarding Defendant's connections with Lewis helped to show Defendant's dealings with the co-conspirators. Also, Defendant's pooling money with Lewis to buy drugs further supports the State's theory that Lewis and Defendant were conspiring together to buy and distribute cocaine. Such information was quite relevant to the State's case regarding defendant's conspiring with Savage and Lewis to traffic in cocaine. In fact, Butler testified that he had seen Lewis with kilogram quantities of cocaine that he would then distribute to Butler, Defendant, Savage, and others. The Court does not find that Butler's testimony was offered for an improper purpose; rather, the Court finds that the evidence adduced from Butler was relevant to show the circumstances surrounding the crime at issue.

## *Rome*

Defendant further alleges that Witness Rome's testimony that"Lewis told him that the Defendant and Kenneth Savage contributed money toward the purchase of kilos of cocaine" was irrelevant to the trial of Defendant on the conspiracy to traffic in cocaine charges.

Rome testified that he would generally supply Lewis with two to three kilograms of cocaine at a time for which the purchase price came from Lewis, Savage, and Defendant. He further testified that he had "use[d] Mr. Lewis in order to distribute [Rome's] cocaine, and whatever he [Lewis] did, they did." the Court finds that evidence that Defendant, Savage, and Lewis were all pooling their money to buy large amounts of cocaine for distribution was highly relevant evidence of Defendant's connections and dealings with the other co-conspirators during the time frame alleged in the Information.

## *Williams*

Defendant finally argues in this ground that Witness Williams's testimony that he had delivered drugs to Defendant and Savage and had conducted marijuana transactions with Defendant and Savage "was not relevant in a trial concerning conspiracy to traffic in 400 grams or more but less than 150 kilograms of cocaine."

Williams testified that any time he had drug dealings with Savage, Defendant would be present. He also testified that Defendant would often be driving the vehicle in which Savage and Defendant would arrive for the deals. As noted previously, evidence connecting Defendant with his co-conspirators in drug transactions cannot be considered irrelevant to the charges the State had levied against Defendant. Therefore, testimony that Defendant and Savage had joined in deliveries of drugs was relevant and admissible at Defendant's trial. Also, Defendant had also been charged with, and was being tried for, conspiracy to traffic in cannabis. Therefore, testimony that Williams had had marijuana transactions with Defendant and Savage was also relevant to the trial.

After consideration of the above facts, the court does not find that counsel was deficient for having failed to object to the testimony adduced at trial from any of these witnesses. Each witness gave testimony linking Defendant to other co-conspirators and linking defendant to the drug trade. The Court therefore finds that the testimony about which Defendant complains was relevant evidence produced by the State to help the jury understand the facts, circumstances, and connections surrounding Defendant and the charged crimes, and its relevance was not outweighed by danger of unfair prejudice. Counsel is not ineffective for failing to lodge a meritless objection.

Additionally, Defendant has failed to show prejudice. As the State points out in its response to this Court's order to show cause, the testimony that Defendant argues should have been inadmissible constituted approximately 60 pages of a trial transcript more than 700 pages longs. Indeed, even Defendant points out that most of the evidence against him came from the wiretap recordings played in court for the jury. The testimony from these witnesses, therefore, did not become a feature of the trial so that the jury would rely on that information to convict Defendant. Defendant has failed to show that absent the testimony of these witnesses the outcome of the trial would have been different. Therefore, this claim cannot entitle Defendant to relief.

(Doc. 22, Ex. N, pp. 206-210) ((footnotes citing to attached portions of trial transcript omitted). The First DCA summarily affirmed.

The state collateral court, in denying petitioner's motion for postconviction relief, concluded that the prosecution had laid the proper foundation to introduce the testimony at issue, and that the defense had no basis under state law for objecting to its admission. The First DCA affirmed that decision. When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) (quotation marks omitted). Because this Court will not "second guess" the Florida state courts' conclusion that Wigley's, Butler's, Rome's, and Williams' testimony was admissible under state evidentiary law, petitioner cannot demonstrate that his counsel was deficient for failing to object to its introduction. *See id*; *see also Freeman v. Attorney Gen*., 536 F.3d 1225, 1233 (11th Cir. 2008) (holding that a lawyer cannot be deficient for failing to raise a meritless claim). Further, the state courts' conclusion that petitioner's proposed state law objection would have failed shows that the failure to make the objection caused no prejudice.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six          "The State Court Erred In Denying Ground Four of Petitioner's
                    Postconviction Rule 3.850 Motion Alleging Defense Counsel's
                    Failure To Investigate And Seek Voice Exemplar, Where
                    Petitioner Advised Counsel That He Did Not Recognize His
                    Voice On Recorded Phone Calls."  (Doc. 16, p. 16).

Petitioner alleges that the State's case relied heavily on intercepted cellular
telephone recordings "which claim to be the voices of petitioner and other
individuals" discussing the purchase of cocaine.  The telephone recordings were
admitted through the testimony of Agent Rigoni, who testified that he oversaw the
interception and recording of telephone calls from Kenneth Savage's, Douglas
Lewis's and petitioner's cell phones; that he provided copies of those phone calls to
the State; and that he recognized petitioner's voice on those recordings.  Several of
the recordings were played for the jury during Rigoni's testimony.  (Doc. 16, pp. 16-
17).  Petitioner says he advised defense counsel that he did not recognize his voice
on many of the recorded calls, and that counsel should have investigated petitioner's
claim and sought a voice exemplar.  Petitioner asserts that "an investigation would
have resulted in the discovery that the voice claimed to be that of petitioner was not
the petitioner's.  Of course, had this occurred, such evidence would have rendered the
State's case unbelievable as to proof that petitioner conspired to sell cocaine, and
would have made law enforcement, agent Rigoni, to be in the position as one who
manufactured evidence."  (*Id.*, p. 17).

The parties agree that petitioner presented this claim to the state courts in his
Rule 3.850 proceeding.  (Doc. 16, p. 17; Doc. 20, p. 15).  Respondent asserts that
petitioner is not entitled to federal habeas relief, because his claim is without merit
and because the state courts' rejection of the claim is consistent with *Strickland*.
(Doc. 20, pp. 15-18).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Four of his amended Rule 3.850 motion. (Doc. 22, Ex. M, pp. 151-56).  The state court denied relief as follows:

> The chief evidence against Defendant at trial was a collection of recordings made of telephone calls between defendant and his co-conspirators recorded by law enforcement via wiretap.  Defendant alleges that on several of the calls, he did not recognize his voice, and that one of the tapped telephones that the police claimed belonged to Defendant was actually registered to another person.  Defendant alleges that an expert in voice analysis could have taken an exemplar of Defendant's voice and compared it to the voice heard on the various recordings to prove that Defendant was not actually the conspirator on the recordings.

> Defendant does not allege that he ever informed counsel that he was not the person who had had the conversations captured in the police recordings.  Counsel cannot be ineffective for failing to procure an expert to prove a fact of which he was not informed.  See Blair v. State, 17 So. 3d 1254, 1256 (Fla. 2d DCA 2009), citing Prieto v. State, 708 So. 2d 647, 649 (Fla. 2d DCA 1998) (holding that ineffective assistance claim predicated on counsel's failure to call alibi witnesses was facially insufficient when the defendant did not allege that he had provided the names of the purported witnesses to counsel since "counsel could not be found ineffective for not calling alibi witnesses he knew nothing about").

> Furthermore, even had Defendant made counsel aware of his concerns, Defendant appears to overlook the rather obvious problem, from Defendant's counsel's perspective, with conducting voice print testing on the recordings; such testing could have revealed that Defendant's voice *was* on the recordings.  As Defendant notes in his

motion, counsel brought him a copy of the transcripts made from the telephone recordings so that Defendant could inspect them before trial. Had Defendant not recognized the conversations, he could have informed counsel and asked counsel to retain an expert to prove that the conversations did not involve Defendant. However, Defendant does not allege that he ever told counsel that the conversations were not his. Therefore, any voice analysis of the conversations could well have revealed that Defendant's voice had been identified as part of the recordings. The State adduced testimony from Witness Wigley at trial that she had recognized Defendant's voice on the recordings and that the telephone number in dispute was the telephone number that she had used to contact him. Hence, counsel would have been warranted in determining that conducting a voice analysis could possibly do Defendant more harm than good. Counsel was not ineffective for failing to retain an expert to conduct testing that could possibly have provided the State with additional evidence to use against Defendant at trial.

(Ex. N, pp. 213-14) (footnotes omitted). The First DCA summarily affirmed.

As with Grounds Four and Five above, the state courts' rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the two-pronged standard identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984). There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state courts.

The state court's rejection of petitioner's claim did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. As respondent points out, petitioner does not say in his federal habeas petition when he advised counsel that he did not recognize his own voice in the audiotapes of the intercepted calls. In the ground that follows this one, Ground Seven, petitioner asserts that he did not hear the audiotapes of the calls until trial. (Doc. 16, p. 18). According to petitioner's allegations then, the first time he informed counsel he "didn't recognize his voice" on the audiotapes was during the presentation of that

evidence at trial. Petitioner faults counsel for failing to retain a voice identification expert, mid-trial, to obtain a voice exemplar from petitioner and compare the exemplar to the audio taped voice attributed to petitioner.

The state court found (and the record demonstrates), that petitioner knew <u>prior</u> to trial of the specific wiretapped telephone conversations attributed to him. Petitioner was aware of these conversations through the arrest warrant affidavit (*see* Doc. 21, Ex. A, pp. 76-105), and through the transcripts of the wiretapped calls themselves, transcripts which petitioner reviewed prior to trial (*see* Doc. 22, Ex. M, p. 163 (allegation in petitioner's amended Rule 3.850 motion that he reviewed the transcripts of the audiotapes three days prior to trial)).[5] Petitioner does not allege that he ever communicated to counsel, during counsel's pre-trial investigation of the case, that he did not recognize or recall having the recorded conversations attributed to him, that he was not involved in the conspiracy, or that he had not had telephone conversations regarding drug trafficking with Lewis or Savage. Counsel was reasonable in relying on petitioner to alert him to identification issues involving the intercepted calls in sufficient time for counsel to investigate prior to trial. *See Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel." (internal quotation marks omitted)); *see also Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate."). The

---

[5]Petitioner made this allegation in Ground Six of his amended Rule 3.850 motion. Although petitioner declines to pursue that particular ineffective assistance claim here, this allegation is part of the record that was before the state court.

state courts' conclusion that counsel's pre-trial investigation was not deficient is reasonable.

The state courts were also reasonable in concluding that, as a matter of trial strategy, a reasonable attorney could determine there was more potential harm than good in pursuing a last-minute voice analysis. Counsel had to weigh the risks of pursuing a voice exemplar and voice identification analysis against the likelihood of the analysis producing a favorable outcome. Defense counsel was faced with Agent Rigoni's testimony of extensive investigative work and how he came to the conclusion petitioner's voice was on the recordings; Candace Wigley's testimony that she dealt with petitioner in the drug business, that her means of contacting petitioner was by telephone, that the cellular telephone number she used to contact petitioner was (850) 341-6503; and that she reviewed the calls intercepted from cellular telephone number (850) 341-6503 and recognized petitioner's voice on those calls; and corroborating surveillance evidence (prosecution witnesses' observations and photographs of petitioner at various meetings he had arranged on the calls). Petitioner's eleventh-hour, self-serving comment to counsel during trial that he "did not recognize his voice on many of the calls" could be deemed by a reasonable attorney as insufficient to seriously question petitioner's identity as the speaker on the intercepted calls, and as a very risky basis to pursue a voice analysis that could potentially harm the defense. Without the voice analysis, counsel could still attack Rigoni's testimony on the basis that Rigoni did not personally know petitioner, and could attack Wigley's testimony as lacking credibility because she pled to an offense with a potential 35-year sentence. Thus, even assuming the truth of petitioner's allegation that he informed counsel as the audiotapes were being played to the jury that he did not recognize his voice on "many" of the calls, it would not have been

unreasonable for counsel to decline to pursue an expert analysis of a voice exemplar.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Six.

| Ground Seven | "The State Court Erred In Denying Ground Five Of Petitioner's Postconviction Rule 3.850 Motion Alleging Defense Counsel's Failure To Seek Suppression Of Wiretap Recordings, Where Recordings Were Probably Tampered." (Doc. 16, p. 18). |

Petitioner faults trial counsel for failing to "seek suppression" of the wiretap recordings on the grounds of "the probability of tampering." (Doc. 16, p. 18). Petitioner provides the following factual basis for this claim:

> The petitioner heard for the first time at trial the recorded cell-phone calls. Petitioner advised counsel that he did not recognize his voice and that the number issued to the particular cell-phone was in another individual's name. The petitioner claimed that tampering probably occurred, given the fact that his voice was not on the recordings.

(*Id.*).

Respondent asserts that this point was "a small part" of the fifth ground for relief in petitioner's amended Rule 3.850 motion. (Doc. 20, p. 19). Respondent argues that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim is consistent with *Strickland*. (*Id.*).

A. Clearly Established Federal Law

In *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986), the Supreme Court held that for a defendant to prevail on an ineffective assistance claim where counsel's failure to litigate a Fourth Amendment claim

competently is the principal allegation of ineffectiveness, the defendant must establish deficient performance and prejudice under *Strickland*, and "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Id.*, 477 U.S. at 375, 106 S. Ct. at 2582-83 (*citing Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068).

B.     Federal Review of State Court Decision

Petitioner raised the issue of counsel's failure to seek suppression on grounds of tampering as part of Ground Five of his amended Rule 3.850 motion. (Doc. 22, Ex. M, pp. 156-60). The state court denied relief as follows:

> Defendant alleges that counsel should have moved to suppress the wiretap recordings used by the State at trial because one of the tapped telephone numbers was registered to another individual and because the police investigator, who had never had any dealings with Defendant, could not possibly testify that he recognized Defendant's voice on the recordings.
>
> "[W]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that this Fourth Amendment claim is meritorious." <u>McDonald v. State</u>, 952 So.2d 484, 497 (Fla. 206). According to section 934.09(10)(a), Florida Statutes, the grounds for suppression of wiretap evidence are three: "1. The communication was unlawfully intercepted; 2. The order of authorization or approval under which it was intercepted is insufficient on its face; or 3. The interception was not made in conformity with the order of authorization or approval."
>
> Defendant has not advanced any argument that the wiretap evidence produced in his case was unlawfully recorded or recorded using unlawful procedures. Instead, Defendant argues that the recording, although not unlawful, simply did not include his voice as

alleged. While an argument regarding the identity of the person speaking on the recording could have been made at trial, a motion for suppression of the evidence grounded thereon would not have been appropriate. Counsel is not deficient for failing to make a meritless motion. See Barnhill v. State, 971 So.2d 106, 110 (Fla. 2007).

Furthermore, any argument that the recordings would not have been admissible on other than constitutional bases would similarly fail. All that is necessary for a "tape recording to be admissible [is that] the State must show to the trial court's satisfaction that (1) the recording device was operating properly, (2) that it was operated in a proper manner, (3) the recording was accurate, and (4) the voices of the persons speaking were identified." Parnell v. State, 218 So.2d 535, 541 (Fla. 3d DCA 1969).

At trial, the investigating officer testified that the recording devices were operating properly, were operated according to proper protocol, and were accurate renditions of the calls that they purported to embody. Additionally, the investigating officer testified to the identity of the voices heard on each call. Therefore, the State laid the proper foundation for admissibility of the recordings. While Defendant was free to challenge the State's assertion that Defendant's voice had been recorded within the telephone calls, no motion to exclude the recordings would have been successful on admissibility grounds. Hence, Defendant has failed to prove either deficient performance of counsel or prejudice. This claim cannot entitled Defendant to relief.

(Ex. N, pp. 214-16) (footnotes omitted). The state court addressed petitioner's assertion that counsel should have moved to suppress the recordings on grounds of "tampering", as follows: "Defendant also makes a passing allegation that 'tampering [with the recordings] probably occurred.' Defendant does not, however, explain how he believes such tampering occurred or what information was manipulated. As this allegation is facially insufficient it is properly denied." (Ex. N, p. 214 n. 23). The state court also noted, with regard to the State having identified the voices of the

persons speaking, that in addition to Agent Rigoni identifying the voices, "Witness Wigley testified that she had reviewed calls from the telephone number that Defendant now disputes, that she had recognized Defendant's voice on those calls, and that the disputed telephone number was the telephone number that she had used to contact Defendant." (Ex. N, p. 215 n. 25 (citing excerpt from trial transcript)). The First DCA summarily affirmed.

The state courts' rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the standard identified by the Supreme Court in *Kimmelman*. There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state courts.

The state courts' rejection of petitioner's claim also did not involve an unreasonable application of *Kimmelman*. Petitioner's allegations of "tampering" do not suggest a plausible, much less meritorious, basis for suppression on Fourth Amendment grounds. To the extent petitioner suggests "tampering" provided a basis under state law for excluding the wiretap evidence, the state courts have already answered the question of how the issue would have been resolved under Florida law had defense counsel sought suppression of the evidence on the grounds of tampering or that the voice on the recordings was not petitioner's. The motion would have been denied. Because this Court will not "second guess" the Florida state courts' conclusion that the wiretap recordings were admissible under state evidentiary law, petitioner cannot demonstrate that his counsel was deficient for failing to object to its introduction. *See Callahan*, 427 F.3d at 932. A lawyer cannot be deficient for failing to raise a meritless claim, *Freeman*, 536 F.3d at 1233, and a lawyer's failure to raise a meritless claim cannot be prejudicial.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Kimmelman*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Seven.

Ground Eight      "The State Court Erred In Denying Ground Seven Of Petitioner's Postconviction Rule 3.850 Motion Alleging Defense Counsel's Failure to Present Defense Of Alternative Suspect, Where Evidence Existed That Tended To Implicate Another Individual In Charged Crimes." (Doc. 16, p. 19).

Petitioner alleges the following facts to support this claim:

> Defense counsel was aware that the particular cellular phone in which Rigoni made his recording from was in the subscriber's name, Terry Fletcher. Although the Petitioner advised counsel that he did not recognize his voice on the recordings, and that the cellular phone where the recordings were made from was someone else's, defense counsel still failed to realize the significance of arguing to the jury that the voice recorded claimed to be that of petitioner was Terry Fletcher. Arguing the alternative suspect defense would have left the State unable to rebut the claim – save for Rigoni's testimony – as there was affirmative evidence that the owner of the cellular phone was Terry Fletcher and not the Petitioner. Defense counsel was aware of this information prior to trial.

(Doc. 16, p. 19).[6] The parties agree that petitioner presented this claim to the state courts in Ground Seven of his amended Rule 3.850 motion. (Doc. 16, p. 19; Doc. 20, p. 20). Respondent asserts that federal habeas relief should be denied, because there was no factual basis to pursue the "alternative suspect" theory, and because the state court did not unreasonably determine the facts or mis-apply *Strickland*, in rejecting

---

[6]The allegations in petitioner's Rule 3.850 motion alternated between "Terry Fletcher" and "Terry Fisher". (Doc. 22, Ex. M, pp. 152-53).

petitioner's claim.  (Doc. 20, p. 20).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, as set forth above.

B.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Seven of his amended Rule 3.850 motion.  (Doc. 22, Ex. M, pp. 164-67).  The state court denied relief as follows:

> Next, Defendant alleges that counsel was deficient in failing to argue that someone other than Defendant was the conspirator in the recorded conversations.  Defendant relies again on his assertion that he was not the individual whose voice was recorded by law enforcement and that an expert witness testifying that the voice on the recordings was "probably not Defendant's" and that the subscriber to the telephone number at issue was not Defendant would have been strong evidence that someone other than Defendant had committed these crimes.
>
> As noted above, Defendant had access to the transcripts and does not allege that he informed counsel that he was not involved in the conversations.  Additionally, Defendant does not allege that he told his counsel that he did not remember having the recorded conversations, that he was not involved in the conspiracy, or that he had not had conversations regarding drug trafficking with Lewis or Savage; rather, Defendant simply alleges that he told counsel at trial that he did not recognize his own voice on the recordings.  Without such allegations, this claim cannot entitle Defendant to relief as counsel cannot be deemed ineffective for failing to raise a defense of which he was not made aware.

(Doc. 22, Ex. N, pp. 216-17).

Even assuming the truth of petitioner's allegation that he told counsel prior to trial that cellular phone number (850) 341-6503 was not registered to him, counsel was not unreasonable for failing to investigate that information or argue it to the jury.

As discussed in Ground Six, *supra*, prior to trial petitioner gave counsel no reason to question that he was the one <u>using</u> that cellular phone number (regardless of who it was registered to) and that the conversations attributed to him were his. During the pre-trial investigation and preparation of the defense, petitioner did not deny to counsel that he did and said the things attributed to him. Accordingly, it was not unreasonable for counsel not to pursue a defense strategy of misidentification (or "alternative suspect"), and to instead focus the defense on the lack of sufficient proof of an agreement and intent necessary to establish conspiracy. Petitioner has not shown that the chosen defense strategy was unreasonable. Further, in light of the mountain of evidence establishing petitioner's use of phone number (850) 341-6503, his voice on the wiretapped calls, and his identity as one of the conspirators, petitioner fails to establish a reasonable probability he would have been acquitted had counsel obtained the subscriber record, introduced it into evidence, and argued that fact to the jury.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Eight.

<u>Ground Nine</u>  <u>"The State Court Erred In Denying Ground Eight Of Petitioner's Postconviction Rule 3.850 Motion Alleging Defense Counsel's Failure To Object And Move For Mistrial When State Bolstered The Credibility Of Its Witness By Advising Jury That Witness Was Telling The Truth."</u> (Doc. 16, p. 20).

Petitioner asserts that the prosecutor improperly bolstered the credibility of State's witness Brian Rome during closing argument when the prosecutor stated, "Can you believe Rome? Of course you can. Because when you listen to the phone

calls that law enforcement recorded and Mr. Crum had no idea was taking place, they were pooling their money together to buy cocaine. Is Rome telling the Truth? Yes, he is." (Doc. 16, p. 20 (*citing* trial transcript at Doc. 22, Ex. F, p. 593)). Petitioner faults defense counsel for failing to object and move for a mistrial on the grounds that the prosecutor improperly bolstered the witness.

The parties agree that petitioner presented this claim to the state courts in his amended rule 3.850 motion. (Doc. 20, p. 20). Respondent maintains petitioner is not entitled to relief, because the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, *Strickland*. (*Id.*, pp. 20-21).

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Eight of his amended Rule 3.850 motion. (Doc. 22, Ex. M, pp. 168-72). The state court denied relief as follows:

> In his eighth contention, Defendant avers that counsel should have objected when the prosecutor, in his closing argument, stated that the jury could believe Witness Rome because Rome's testimony was corroborated by the wiretap recordings. Defendant alleges that the prosecutor's comment, "Is Ron Rome telling the truth? Yes, he is," was an impermissible statement bolstering the credibility of the State's witness.
>
> "Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." Spann v. State, 985 So. 2d 1059, 1067 (Fla. 2008). However, a prosecutor does not engage in improper bolstering when he merely points out that a witness's testimony may be believed because it si corroborated by other

evidence.  See Yok v. State, 891 So. 2d 602, 603 (Fla. 1st DCA 2005)
("[T]he prosecutor's isolated comment simply urged the jury to find the
victim honest and straightforward 'on the state of the evidence' before
it"); and Johnson v. State, 858 So. 2d 1274, 1276-77 (Fla. 3d DCA
2003) (holding that the prosecutor's statements in closing argument
were not improper where the prosecutor "simply pointed out that, given
the facts at hand, it was unlikely . . . that the officers' testimony . . .
[was] untrue").

   In this case, the prosecutor stated in closing argument,

      . . . if you recall, Mr. Ron Rome indicated that he
      was supplying Lewis with cocaine back in 2004 and 2005
      and said that Lewis indicated Crum and Savage were
      contributing money.

         Here's the question:  Can you believe Ron Rome?
      Of course you can.  Because when you listen to the phone
      calls that law enforcement recorded and Mr. Crum had no
      idea was taking place, they were pooling their money to
      buy cocaine.  Is Ron Rome telling you the truth?  Yes, he
      is.

Viewed in context, the statements to the jury that they could believe the
testimony of Rome were made to point out the consistency of Rome's
testimony with the other evidence adduced in the case.  The case did not
revolve around the credibility of Rome; the State had adduced evidence
from other sources tending to prove the conspiracy among Defendant,
Lewis, and Savage.  The prosecutor did not attempt to associate the
"prestige of the government" with Rome's testimony nor did he allude
to facts outside the trial record.  Instead, the prosecutor's comments did
no more than point out the harmony between the testimony of Rome and
the wiretap evidence.  Therefore, the Court does not find that the
prosecutor's comments were improper, and accordingly, finds that
counsel was not deficient for failing to object to the comments.

Defendant has also failed to prove prejudice. Of the entire trial transcript, consisting of more than 700 pages, the testimony of Rome constituted approximately fourteen pages. Also, the prosecutor's statements regarding the reliability of Rome's testimony made up approximately six sentences of his closing argument, which spanned more than 45 pages of the trial transcript. With the volume of evidence produced by the State against Defendant at trial, Defendant would be hard pressed to show that absent Rome's testimony and the prosecutor's subsequent comments regarding it, the jury would probably have acquitted Defendant. Confidence in the outcome of the proceedings in this case, therefore, has not been undermined by the prosecutor's comments, and Defendant has failed to prove either prejudice or entitlement to relief.

(Doc. 22, Ex. N, pp. 218-19) (footnotes citing to attached portions of trial transcript omitted). The First DCA summarily affirmed.

The state court correctly identified and applied *Strickland* when analyzing petitioner's claim. As for *Stricklan*d's performance prong, the prosecutorial statements at issue consisted of proper commentary on the credibility of the witness – arguing that the witness was credible based on the evidence presented – and was not improper vouching. Because no improper vouching or bolstering occurred, counsel could not have been ineffective by failing to make an objection or move for a mistrial on that basis, and petitioner cannot show he was prejudiced by counsel's failure to object.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Nine.

<u>Ground Ten</u>      <u>"The State Court Erred in Denying Ground Ten Of Petitioner's</u>
<u>Postconviction Rule 3.850 Motion Alleging Defense Counsel's</u>
<u>Failure to Object To Hearsay Statements Which Denied Petitioner</u>
<u>His Constitutional Right To Confront The Evidence Against</u>
<u>Him."</u>  (Doc. 16, p. 21).

Petitioner's final ground for relief is that counsel was ineffective for failing to object, on hearsay grounds, to Brian Rome's testimony that Douglas Lewis told him petitioner and Kenneth Savage contributed money toward the purchase of kilos of cocaine from him (Rome).  Petitioner argues that Rome's testimony was hearsay and "denied [Petitioner] his right to confront critical evidence."  (Doc. 16, p. 21). Respondent adopts the postconviction court's factual findings, and argues that the state courts' rejection of this claim was consistent with *Strickland* and *Crawford v. Washington*, 541 U.S. 36 (2004).

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Ten of his amended Rule 3.850 motion. (Doc. 22, Ex. M, pp. 175-79).  The state court denied relief as follows:

> One of the State's witnesses, Witness Rome, testified that one of the co-conspirators, Douglas Lewis, had told him that Defendant had pooled resources with Lewis in order to raise enough cash to buy kilogram quantities of cocaine from Rome.  Defendant alleges that this testimony was inadmissible hearsay.  He alleges that counsel's failure to object to the hearsay statement denied Defendant his constitutional right of confrontation.
>
> While hearsay is generally inadmissible in a trial, several exceptions to the rule exist.  One of the exceptions allows for the

statements of a co-conspirator to be admitted into evidence against one of the other co-conspirators. Section 90.803 (18)(e), Florida Statutes, states that "[a] statement that is offered against a party and is . . . [a] statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy" is admissible at trial against the party.

In this case, Defendant was charged in count two of the Information with "between January 20, 2004, and September 8, 2006, . . . unlawfully agree[ing], conspir[ing], combin[ing], or confederat[ing] with another person, to wit: Kenneth Damon Savage and/or Douglas Lewis to unlawfully and knowingly sell, purchase, manufacture, deliver or bring into this state . . . 400 grams or more, but less than 150 kilograms of cocaine."

Rome's testimony that Lewis, one of the alleged co-conspirators, had told him that Defendant was contributing to the purchase of large quantities of cocaine from Rome fell squarely within the hearsay exception detailed above. Rome had testified that he was released from prison on January 20, 2004, and at that time returned to his drug business until he was rearrested in July of 2005. He also testified that Lewis was one of his customers. The time period of Lewis's statement was within the time period alleged for the conspiracy and the statement concerned the subject matter of the conspiracy. Lewis's statement, therefore, was from a co-conspirator during and in furtherance of the conspiracy, making it admissible against Defendant at his trial. As noted above, counsel cannot be considered deficient for failing to make a meritless objection.

Additionally, Defendant has failed to prove prejudice. Although Defendant alleges that he was not given opportunity to cross-examine this testimony, he does not show how the testimony ultimately prejudiced him in light of the large amount of evidence produced against him at trial. See generally Leigh v. State, 967 Fo. 2d 1102, 1104-05 (Fla. 4th DCA 2007). This allegation does not entitle Defendant to relief.

(Doc. 22, Ex. N, pp. 220-22) (footnotes citing to attached portions of trial transcript omitted).  The First DCA summarily affirmed.

The state collateral court's factual findings are presumed correct.  Petitioner has not rebutted that presumption of correction with clear and convincing evidence to the contrary.  Petitioner also has not established that the decision of the state courts to deny his ineffectiveness argument is contrary to, or an unreasonable application of, *Strickland*.  The state courts concluded that Rome's testimony was admissible under Florida law, namely, the "admissions" exception of Fla. Stat. § 90.803(18)(e).  The Court defers to the state courts' determination of this state-law issue.  *See Callahan*, 427 F.3d at 932 ("'It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (*quoting Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005)).  Since the state courts have already ruled as a matter of state law that the evidentiary objection would have been properly overruled, that binding determination of state law means there cannot be attorney error or prejudice for failing to argue the objection.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief on Ground Ten.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The Clerk shall change the docket to reflect that Michael D. Crews has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the amended petition for writ of habeas corpus (doc. 16), challenging the judgment of conviction and sentence in *State of Florida v. Emmitt Dewayne Crum, Jr.* in the Circuit Court for Escambia County, Florida, Case No. 06-CF-4535 be DENIED, and the Clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of July, 2013.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).